W. A. TAYLOR AND WIFE v. THEO. BLAND ET AL.

(Case No. 4183.)

1. CONFEDERATE MONEY — EVIDENCE.— In a suit on a promissory note given in 1863, and payable in "dollars" five years after date, the understanding of the parties as to the character of money in which it was to be paid may be shown from the nature of the transaction and its attendant circumstances. If payable in Confederate money, the holder was entitled to recover its value, estimated at the date of the contract.

2. LIMITATION — COVERTURE.— A note executed to a *feme sole* who marries before its maturity, and, qualifying as administratrix after her marriage, inventoried the note as assets of the estate of a former husband, is subject to the law of limitation, which cannot be defeated by setting up coverture.

3. PLEADING.—A plea setting up matter in reply to the assertion of coverture, which had been pleaded to avoid limitation, need not be under oath.

APPEAL from McLennan. Tried below before the Hon. L. C. Alexander.

Appellant Mrs. Virginia A. Taylor (formerly Virginia A. Downs), joined by her husband, W. A. Taylor, with whom she intermarried in December, 1866, as plaintiffs below, brought suit on the 18th day of September, 1875, against Theodore Bland and his wife, Sallie G. W. Bland, as defendants, upon a note, of which the following is a copy:

"$2,500.                         WACO, Texas, June 2, 1863.

"Five years after date I promise to pay Mrs. Virginia A. Downs, or order, twenty-five hundred dollars, value received, with ten per cent. interest from date — interest payable annually, if I see proper so to pay it.                         THEODORE BLAND."

And a deed of trust bearing even date with the note, given to secure the payment of the same, by Theodore Bland and Sallie G. W. Bland, upon a tract of land of nine hundred and thirteen acres and a stock of horses in McLennan county, and also against W. A. Fort, the trustee therein named, who had failed to execute the trust, and prayed for a judgment for the amount of said note and interest, a foreclosure of lien upon the land described (the horses having been already sold by Bland), and a decree ordering the sale of the same by the trustee or the sheriff for the satisfaction of such judgment.

The appellees presented five issues by their first amended original answer filed May 12, 1879, and their trial amendment filed November 12, 1879, to wit:

1. General denial.

2. That it was "understood and intended," when the note was made, it should be paid in Confederate money.

3. That the note was the property of the estate of F. C. Downs, deceased, and that plaintiff V. A. Taylor held the same in her representative capacity, first, as surviving wife, qualified under the act of August 23, 1856; and second, as the duly qualified administratrix of the estate of F. C. Downs, and was, therefore, not entitled to recover in her own name and right.

4. A plea of the statute of limitation of four years.

5. That two hundred acres of the land, being their homestead, was not subject to be sold for the debt.

Trial, verdict and judgment for appellants for $661.07, and foreclosure of the lien on the nine hundred and thirteen acres of land, less two hundred acres, appellees' homestead.

*Wm. L. Prather* and *John C. West*, for appellants.

*Anderson & Flint*, for appellees.

WATTS, J. COM. APP.— As Confederate States treasury notes constituted almost exclusively the money of the southern states during the war, the people of those states, in their ordinary and general transactions of bargain, sale, loans, etc., were compelled to a very large extent to contract with reference to that character of money. After the close of the war many contracts made during its existence payable in "dollars" came before the state and federal courts for construction and interpretation; and these courts finally settled upon this construction: that where the contract is payable in "dollars," without designating the kind of money meant, the presumption is that the contract called for legal tender "dollars." But the facts and circumstances attending the transaction are admissible for the purpose of rebutting that presumption, and showing that in fact that term meant Confederate "dollars."

Mr. Wharton, in his work on the Law of Evidence, sec. 948, states the rule as follows: "One of the most interesting applications of the principle before us arises from the confusion of currency during the late civil war. In construing contracts made in the Confederate States during the war, the consideration of which was so many 'dollars,' to make the term 'dollars' mean a standard widely apart from that which the parties intended, would be a perversion of justice. It has consequently been held admissible, in such cases, to show what was the currency the parties had in view. Where, however, there is no parol proof offered, the presumption is that the lawful currency of the United States was intended."

It has in other cases, as in this, been contended that the presumption could only be rebutted by positive evidence that other than lawful money of the United States was intended. Such, however, is not the rule; for, as said by Chief Justice Roberts in Heilbroner v. Douglass, 45 Tex., 405, "It is not perceived why that fact might not be proved by the circumstances attending the transaction as well as any other fact."

In the Confederate Note Case, 19 Wall., 559, Justice Field said: "The understanding of the parties may be shown from the nature of the transaction, and the attendant circumstances, as satisfactorily as from the language used."

This is a question of fact, in the determination of which the court or jury trying the issue should consider all the circumstances surrounding the particular transaction, such as the consideration moving the parties to the contract, the date of payment, in short any and every circumstance that would throw light upon the transaction, and lead to the correct solution of the question.

Appellants claim that the court erred in instructing the jury that if they found that the contract intended Confederate money, then to estimate the value of that money at the date of the contract. The settled rule in this state is, that in such cases the party is entitled to recover the value of the Confederate money, estimated at the date of the contract, with stipulated interest on that amount. Mathews v. Rucker, 41 Tex., 638; Johnson v. Blount, 48 Tex., 45.

The proposition is also asserted that the contract or note being payable about five years after date, that evidently the appellee took the chances of having to pay the same in full, in whatever might then be legal tender currency. Such a result does not necessarily follow from the fact that the maturity of the note is fixed at a date when it was to be reasonably supposed that the war would be over. That is a circumstance for the consideration of the jury, with others, in the determination of the question as to what kind of money was contemplated by the contract. If, as a matter of fact, the parties intended to take the hazard or risk of the war, and that the note was to be paid or discharged in full in whatever might constitute the circulating medium at its maturity, then, as the war had concluded, there was no Confederate money, and as the legal tender money of the United States was the sole circulating medium at the maturity of the note, that would be the money called for by the contract. But such a result by no means necessarily follows from the fact that the maturity of the note was fixed at a time five years after its date.

Appellees assign as error the refusal of the court to give the instructions asked upon the question of limitation. To avoid the effect of the defense of limitation, the appellants asserted the marriage of Mrs. Taylor before the maturity of the note, and her continued coverture thereafter. To meet and overcome that reply to the defense of limitation, appellees rejoined that after her marriage in 1867 Mrs. Taylor qualified as administratrix of Downs' estate, and that the note sued on was assets of that estate in her hands, and further that administration was still open and pending. The court refused the instructions asked on the ground that the legal title to the note being in Mrs. Taylor, appellees could not show the equitable title was in the estate, for the purpose of interposing the defense of limitation.

In this the court erred. If in fact she was the administratrix of the estate of her deceased husband, and the note was really assets of that estate in her hands, then so long as it thus remained, her coverture would not prevent the running of the statute.

This rejoinder was not such a plea as the statute requires to be under oath; that is only necessary where the object of the plea is to abate the action as brought. This answer merely sets up matter in reply to her assertion of coverture, and if it is true would destroy, or rather overcome, that plea of coverture so far as it was intended to affect the defense of limitation.

While the instructions asked and refused are not such as ought to have been given as asked, they were sufficient to call the court's attention to an issue in the case which the court had refused to submit in the general charge.

We conclude that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered June 15, 1883.]