## McIntosh v. Wilhoit, Banking Com'r, et al.
Sept. 26, 1939.

S. M. Ward, Judge.

C. A. Noble for appellant.

Craft & Stanfill for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The appeal is from a judgment. dismissing, on demurrer, a petition in equity to set aside a foreclosure judgment and subsequent proceedings. The brief admits that the plaintiff showed no ground for setting aside the judgment, and insists only that she was and is entitled to have the judicial sale of the property set aside and conveyances based on it declared invalid.

In September, 1929, the Hargis Bank & Trust Company recovered a default judgment against the appellant, Mrs. Clara McIntosh, on a note for $350, and the enforcement of a lien on her home securing the debt. On February 5, 1930, the bank was taken over by the

State Banking Commissioner as insolvent. Five days thereafter, with no substitution of the Banking Commissioner or a special deputy appointed to liquidate the bank as a party plaintiff, or other court proceeding, the master commissioner sold the property, under the judgment, to W. J. Combs, who executed the requisite bond payable to the master commissioner. The report of sale was filed in September, 1930. No confirmation or other step was taken in the case until July 18, 1935, when the clerk of the court issued an execution on the sale bond in favor of Combs. It appears that this was without any order of court and that the execution was never returned by the sheriff. Thereafter, on October 2, 1935, Ervine Turner, successor of J. Bryan Smith, as special deputy banking commissioner in charge of the liquidation of the Hargis Bank & Trust Company, filed in the circuit court an assignment of the Combs bid to himself and simultaneously secured an order approving and confirming the report of sale and directing that a deed to the property be made to him in his official capacity. Some time later Turner conveyed the property to Elisha Baker and Lewis Herald. They and the Banking Commissioner and the special deputy are parties defendant and appellees herein.

In effect, the petition pleads that the foreclosure suit was abated and there was no legal right to proceed with the sale until the banking commissioner or his special deputy had become a party, and that in the absence of any pleading or order by or in his behalf the subsequent steps taken in the case were void. Likewise, the subsequent deeds. The plaintiff alleges that she has a good and valid defense to a portion of the claim sued on which she wants to present in the original action, and that she is able, willing and desirous of redeeming her home whenever the record is so made that she can properly do so by paying off the debt to the insolvent bank.

An amended petition pleads that after Smith, the first deputy commissioner, took charge of the affairs of the bank, he advised the plaintiff that there could be and would be nothing further done in the foreclosure suit until he, as liquidating agent, should be made a party by order of court and until further notice had been served on her, and that she need pay no further attention to the matter until that was done. At that time she was attempting to make an adjustment of the balance owing the bank on the debt. She had relied on Smith's

representations that she could pay the balance whenever those proceedings had been taken; had acted in good faith, and did not know otherwise until the deeds had been made by Turner to Baker and Herald. She pleads that she had been deceived and misled to her prejudice and deprived of her home, which is worth many times the amount of the debt.

The argument is: (1) That the Banking Commissioner was a necessary party before any steps could be taken in the original suit and that there must have been an order substituting him as party plaintiff; but if not, it must have been done before the confirmation of sale and execution of deed; (2) that the deputy banking commissioner could not convey the property to Baker and Herald without permission of the court; and (3) that the Banking Commissioner and his deputy were and are estopped to claim any right under the proceeding.

Is the execution of a judgment of sale abated when the judgment creditor by reason of operation of law ceases to have power to collect the proceeds? The succession in title of the bank's assets created a privity of estate therein and the commissioner was bound by the judgment and, as well, entitled to all its benefits. Pineville Steam Laundry v. Phillips, 254 Ky. 391, 71 S. W. (2d) 980. It is provided by Section 21 of the Civil Code of Practice that if the right of a plaintiff be transferred or assigned during the pendency of an action it may be continued in his name. This has been held to permit the taking of a default judgment in the name of a party plaintiff by its trustee in bankruptcy without an order of substitution and without notice to the defendants, even after the case had lain dormant for twelve years. Nicholson v. Thomas, 277 Ky. 760, 127 S. W. (2d) 155. We have in proceedings of this kind a statutory assignment like that of an adjudication in bankruptcy. In any event, the deputy banking commissioner became a party to the suit as of the date of the filing of the master commissioner's report of sale by reason of becoming the purchaser, through assignment from Combs. Caulder v. Elmore, 171 Ky. 575, 188 S. W. 666; Kentucky Joint Land Bank v. Fitzpatrick, 237 Ky. 624, 36 S. W. (2d) 25. For this reason and recognition of the general power of the Banking Commissioner, as hereinafter pointed out, we are of opinion that the plaintiff could not have the sale set aside on account of the bank's in-

solvency, or a failure to have its liquidating agent made a party to the suit sooner.

Could the Banking Commissioner take over Combs' bid and then reconvey the property to others? The Commissioner, or his special deputy, when settling the affairs of an insolvent bank is the trustee of an express trust and as such is vested with power to collect its assets. Though occupying a position analogous to a receiver appointed by a court, he is not so restricted in his administration; nor is he an assignee for the benefit of creditors within the ordinary acceptation of that term. He derives his power from the statute (Section 165a-14) with the express and necessarily implied or incidental authority, liberally construed to effectuate an economical and quick liquidation. American Southern National Bank v. Smith, 170 Ky. 512, 186 S. W. 482, Ann. Cas. 1918B, 959; Wilson v. Louisville Trust Company, 242 Ky. 432, 46 S. W. (2d) 767; Tipton's Adm'x v. Ball, 256 Ky. 816, 77 S. W. (2d) 50; Collopy v. Dorman, 250 Ky. 513, 63 S. W. (2d) 610. The Commissioner, generally speaking, acquires the same rights and equities in the assets of the bank as were possessed by it and he may sue thereon or therefor to recover or liquidate them for the benefit of creditors and stockholders. American Southern National Bank v. Smith, supra. The statute does not require that he shall first obtain the permission or authority of the court in proceeding to accomplish the purpose of his appointment, for he has wide discretion and broad powers in that respect. Thus, he has power to dispose of real estate without first obtaining an order of court directing him so to do (Ex parte Smith, Banking Commissioner, 160 Ky. 83, 169 S. W. 582), and to exchange a mortgage for bonds quickly convertible into cash. Collopy v. Dorman, supra. However, the administration of the affairs of the bank is by statute made subject to review of the courts. It is provided that the Banking Commissioner or his deputy, within 30 days after taking charge of a bank, shall file in the circuit court a prescribed statement of assets and liabilities and thereafter at each succeeding term of court file a report of his acts, which is subject to judicial review. Any aggrieved party may question them in that proceeding. Section 165a-17, Statutes. The Commissioner's transactions are always subject to confirmation or disapproval by the court and all parties dealing with him must take cognizance of that limita-

tion. Hill's Adm'r v. Dorman, 265 Ky. 765, 97 S. W. (2d) 788. We are of opinion, therefore, that it was not necessary that the deputy banking commissioner should have first received judicial authority to take over the Combs purchase or to convey the land to Baker and Herald. In the absence of any plea or other record to the contrary, it is presumed that these acts were duly reported to the court and that the appellant had an opportunity to except to them and raise questions of their fairness or wisdom. This distinguishes the case from Hill's Adm'r v. Dorman, supra, where it was held that a certain release from liability of a surety made by a special deputy banking commissioner was not binding because the transaction had not been seasonably reported to the court, and when it was reported by his successor it was subject to exception by a depositor, whose objection to confirmation was sustained.

It is to be observed that the amended petition pleading estoppel merely alleges that the plaintiff's conversation with the special deputy commissioner and his promises were "after" the affairs of the bank had been placed in the hands of the commissioner. Construing the pleading against the pleader, it may be assumed that this was after the sale had been made to Combs and before the assignment of his purchase, during which period the matter was not under the control of the Banking Commissioner. To sustain the contention of estoppel upon the pleading, so lacking in definite allegations of time and fact, would require speculation and the assumption of the existence of many favorable conditions essential to a sufficient plea. Obviously the court must act on the record as made.

The plaintiff not having manifested any legal ground for the relief sought, we are constrained to affirm the judgment.

Judgment affirmed.