# Dorman, Banking Commissioner, et al. v. Dell et al.

(Decided June 24, 1932.)

(As Extended on Denial of Rehearing Sept. 27, 1932)

36

SANDIDGE & SANDIDGE, for appellants.

CARY, MILLER & KIRK, R. M. HOLLAND, and R. H. SLACK, for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

The Central Trust Company, of Owensboro, Ky., suspended on January 2, 1932, and placed its assets in the hands of the banking commissioner. The General Assembly at its last session adopted an act known as House Bill No. 84, which provided:

> "That whenever any bank or trust company or combined bank and trust company organized under the laws of this Commonwealth shall for any reason be suspended or closed, or is now suspended or closed, if not less than twenty-five of the depositors therein, with deposits in excess of twenty-five dollars each, shall notify the 'Banking Commissioner' of the Commonwealth of Kentucky,

in writing, that they desire to attempt to reorganize, or otherwise reopen or consolidate such bank or trust company, or combined bank and trust company with some other banking institution, a reasonable time, shall be given by the 'Banking Commissioner' of the Commonwealth of Kentucky, during which, liquidation of such institution shall not proceed except in such matters as may in the opinion of the Banking Commissioner be necessary for the preservation of the assets of said institution; and thereupon the depositors shall proceed without delay with the perfection of a plan and articles of agreement, outlining in general the proposed plan, of consolidation or reopening, which proposed plan must be signed by deposit creditors representing seventy-five per cent. of the amount of all deposits in such bank or trust company or combined Bank and Trust Company; exclusive of deposits of less than twenty-five dollars each.''    Chapter 19, Acts 1932, section 165a-64, Ky. Stats., 1932 Supp.

Pursuant to the provisions of the act, a group of depositors of the Central Trust Company originated a plan for reorganization and obtained from the banking commissioner an expression of approval of the objects outlined. On April 26, 1932, the banking commissioner directed his deputy to suspend further liquidation except in matters essential to conserve assets, in order to permit the reorganization committee of the depositors to proceed with the plan of reorganization. The order fixed no duration for the suspension, but it was necessarily intended to continue for a reasonable time in order to comply with the statute. On May 16, 1932, the order of suspension was revoked, having been in effect but 20 days. A proceeding was pending in the Daviess circuit court entitled "In the Matter of R. L. McFarland, Special Banking Commissioner, in Charge of the Affairs of the Central Trust Company, of Owensboro." In that proceeding an application had been made by the banking commissioner for authority to make an assessment upon the stockholders of the trust company under the statute imposing double liability. Objections to the motion were filed by several stockholders, and the issue was pending for hearing.

A number of the depositors of the trust company, who were trying to effect a reorganization, intervened for the purpose of procuring an order of court setting aside the act of the banking commissioner by which he had revoked the order of suspension granted pursuant to the statute. It was represented by the depositors that progress had been made, and facts were stated tending to show that more time was necessary. The total deposits in the closed bank amounted to more than $1,600,000, and depositors owning $1,176,518.09 thereof had signed the reorganization agreement. The amount lacked but $56,616.99 of representing 75 per cent. of the total amount of deposits in the Central Trust Company, exclusive of depositors with credits of less than $25 each. The circuit court entered an order setting aside the act of revocation made by the commissioner, and extended the time until July 15, 1932. It is from this order that the appeal is prosecuted.

Passing all other questions, we proceed at once to consider the validity of the act of the Legislature and the propriety of the action of the court. The appellant takes the position that House Bill No. 84 is unconstitutional; that the discretion of the banking commissioner may not be controlled by the court; and that the intervening petition constituted a collateral attack upon an official act of the banking commissioner.

1. It is argued that the act violates several sections of the State Constitution and the Fourteenth Amendment to the Federal Constitution, in that the obligation of a contract is impaired and due process of law is denied. The appellant does not complain that any constitutional right of his has been invaded, but that the minority of the depositors who might not concur in the plan of reorganization are in some way deprived of their vested rights, and that the obligation of the contract between the trust company and its depositors might be impaired.

It is said that, when a bank closes its doors, each depositor thereof has a claim against the bank for the amount of his deposit which constitutes property subject to his control; that the provision of House Bill No. 84 deprives the minority depositors of the right of control over such property, and makes it absolutely subject to the arbitrary power of the three-fourths majority of the depositors. The argument is fallacious.

The 75 per cent. of the depositors that concur in the reorganization agreement do not have absolute or arbitrary power over the rights of the other depositors. The bank is insolvent and unable to perform its contract with the depositors. Each of the depositors has a claim against the bank to be paid out of the assets. It is certain that the depositors are confronted with a condition that may result in a loss. The contract with the depositors is not impaired by the statute, which seeks merely to provide means for the mitigation of the loss already incurred. If it is possible for a reorganization to be perfected, the loss of each depositor may be lessened. The act does not authorize the confiscation of any property. Any plan of reorganization must be submitted to the banking commissioner, and his approval or disapproval must be obtained, and his action is subject to review by the circuit court, and by this court. The officer has authority, and it is his duty to protect all of the depositors. The majority, no less than the minority, must be considered. If all of the depositors should agree upon a reasonable plan of reorganiaztion, certainly no one could say that contract rights were unconstitutionally impaired. If any of the depositors do not join in the plan, other provisions may be made for the protection of their just rights. Jennings v. Fidelity & Columbia Trust Co., 240 Ky. 24, 41 S. W. (2d) 537; Cralle v. Louisville Title Co., 244 Ky. 753, 52 S. W. (2d) 891. The sufficiency of the protection afforded would be a proper subject for consideration by the commissioner, and, if his acts were unsatisfactory to any one concerned, the circuit court is empowered to review them. Ky. Stats., sec. 165a-17. The depositors have no absolute right to continue liquidation, when that course is no longer necessary to secure their rights.

The act does not authorize three-fourths of the depositors to reorganize the bank without regard to the rights of the minority, nor does it allow one-fourth of the depositors to defeat the purpose of the remaining three-fourths. If any of the depositors are hurt, it is not by virtue of the statute, but it would be the fault of the particular plan of reorganization. Any plan approved by the banking commissioner and the circuit court may be reviewed here at the instance of any party aggrieved. Jennings v. Fidelity & Columbia Trust Co., 240 Ky. 24, 41 S. W. (2d) 537. In view of

these considerations, there is no room for complaint that due process of law is denied, by compelling the commissioner to grant a reasonable time to the parties vitally interested to work out a plan of their own. The law creates the office of banking commissioner and defines his functions, and the Constitution interposes no obstacle to the creation of a means of reorganization of the institution. Doubtless the commissioner of his own volition could act as the statute directs, and there is no reason why such action may not be made mandatory. The rights of the depositors furnish the basis of the proceeding and their protection is the object of the law. The commissioner is the statutory trustee of an express trust for the benefit of the creditors whose interests are paramount. It is a principle of constitutional law that no one may attack the validity of a statute, unless he shows that it infringes some right of his. Cumberland Pipe Line Co. v. Com., 228 Ky. 453, 15 S. W. (2d) 280; Sullivan v. Berry, 83 Ky. 198, 4 Am. St. Rep. 147. The officer may question the validity of a statute to the extent it imposes a duty upon him. Rhea v. Newman, 153 Ky. 604, 156 S. W. 154, 44 L. R. A. (N. S.) 989; Norman v. Kentucky Board of Managers, 93 Ky. 537, 20 S. W. 901, 14 Ky. Law Rep. 529, 18 L. R. A. 556; Talbott v. Board of Education, 244 Ky. 826, 52 S. W. (2d) 727, decided June 24, 1932. But when a statute is valid as to the officer it is not for him to raise a question as to its incidence as against the rights of some other person. Certainly there can be no doubt of the validity of the statute in so far as it directs the banking commissioner, when the provisions of the act have been observed, to suspend liquidation for a reasonable time to permit reorganization of the institution. The office of banking commissioner is created by a statute which defines his powers and duties, and the officer is under duty to obey the directions of the statute in order that its purpose may be accomplished. The state may control the conduct of its agents in administering a state agency. The statute directed the commissioner how to discharge his duty in the matter specified, and to argue that the authority which created the office and defined its duties could not constitutionally compel a temporary cessation of liquidation for a laudable purpose is so obviously unsound as to render elaboration unnecessary.

2. It is equally apparent that the action of the court in setting aside the act of revocation of the com-

missioner and granting further time to the depositors was proper. The admitted allegations of the pleading justified the action. The large number of depositors and the large amount involved required considerable time to carry out the purpose, especially under existing financial difficulties. The extension of time to July 15, 1932, was certainly not unreasonable, considering the progress that had been made, and the work that remained to be done.

3. The discretion of the commissioner was not improperly interfered with by the court. All that was done was in obedience to the statute, and the court may enforce a statutory duty in favor of any one entitled to have that duty discharged.

A court of equity in control of the administration of a trust has ample power to enter such an order when the facts render it appropriate. In this case the statute, under which the banking commissioner acts, expressly requires him to report to the court all of his acts concerning an institution in his hands, and confers upon any person, firm, or corporation aggrieved the right to have a review thereof by the court. Section 165a-17, Ky. St.; Ex parte Smith, Banking Commissioner, 160 Ky. 83, 169 S. W. 582; Wilson v. Louisville Trust Co., 242 Ky. 432, 46 S. W. (2d) 767. Chapter 19 of the Acts of 1932, in mandatory terms, required the commissioner to grant an extension of time in the circumstances presented. The hasty revocation of the order of suspension was arbitrary and it was the duty of the court to correct such action.

Although courts, in the absence of an abuse of power by executive and administrative officers, will exercise no control over the discretion vested in them, yet the power of equity will be interposed to correct abuses or to enforce the provisions of a statute for the benefit of those entitled to such relief. The statute directs the banking commissioner, under certain circumstances, to suspend liquidation of an institution in his hands for a reasonable time to accomplish a specified purpose. What would constitute a reasonable time might vary with the circumstances, but in the present case no doubt can arise that twenty days was not a reasonable time to accomplish the onerous task which the appellees had undertaken. The statute in question, in so far as it was addressed to the banking

commissioner, was valid, and it was his duty to follow its directions. Speer v. Dossey, 177 Ky. 761, 198 S. W. 19. In the exigency, it was proper for the court to correct the error of the commissioner and to grant a reasonable time to permit the reorganization plan to be perfected.

4. The action of the court in setting aside the revocation of the order of suspension was not a collateral attack, but a direct review of the commissioner's act. As already pointed out in this opinion, the law provides for a review in the circuit court of the acts of the commissioner, and such review is in no sense a collateral challenge of the validity of the commissioner's orders. "This section (165a-17 Ky. Stats.) provides that any person by petition addressed to the circuit court may have any act of the banking commissioner reviewed by the court in the same manner and by the same rights and powers as would have attached had such commissioner been a receiver appointed by the court." Thompson v. Denny, 233 Ky. 696, 26 S. W. (2d) 514, 515.

The judgment is affirmed

The whole court sitting.