## Snowden et al. v. Dorman, Banking and Securities Com'r, et al.

(Decided March 10, 1936).

JOHN P. HASWELL and J. J. KAVANAUGH for appellants.

WALLACE A. McKAY for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This is another action for the approval of a plan of the reorganization and reopening of a state bank as provided for by section 165a-64, Kentucky Statutes (Baldwin's Supp. 1933).

The Bank of Prospect, Jefferson County, Ky., closed its doors and was placed in the hands of the banking and securities commissioner of this commonwealth on the 7th day of January, 1932. Thereafter, on the 29th day of November, 1932, 81 per cent. of the depositors formulated and by a writing approved a plan for its reorganization and reopening. The same was subsequently presented to the banking and securities commissioner for his approval as provided by section 165a-64. He declined to approve the same, not because "any further or additional thing to be done, as in his opinion" was necessary to place the bank "in position to open and function as a going concern," but because a commission was agreed to be paid by the consenting depositors to a Mr. Wedding for his activities in formulating the plan of reorganizing the bank; "the bank in liquidation had the benefit of a 100% assessment of the stockholders to be paid to the depositors" which would be lost on reorganization; the plan did not contemplate "the Federal Deposit Insurance Company or the Reconstruction Finance Corporation insuring the depositors." On his refusal to approve the plan of reorganization and reopening, this action was filed in the Jefferson circuit court to secure its approval of the plan of reorganization and reopening of the bank. Thereafter, the liquidating agent in charge of the affairs of the bank prepared, or had prepared, an instrument to be signed by depositors who had agreed in writing to the plan of reorganization and reopening, with-drawing their consent. He caused his son and another in an automobile to canvass the depositors for the purpose of inducing them to sign this instrument. By this indefensible method, sixteen depositors owning deposits aggregating

$17,196.61 were induced to sign an instrument expressing their desire to withdraw their consent to the reorganization and reopening of the bank. While this was being done, the banking and securities commissioner filed an answer. The first paragraph was a traverse of the petition. In the second, again he failed to state "any further or additional things to be done, as in his opinion, was necessary to place the bank in a position to open and function as a going concern," but, instead, stated most irrelevant matters. Those facts presented in the answer, which were not relevant, were for the court to determine if, and when, it approved the plan of reorganization and reopening of the bank. Later, he filed an amended answer, presenting the list of depositors with the amount of their respective deposits, whose names had been so secured by the liquidating agent to the instrument, manifesting their desire to withdraw from the plan of reorganization. Thereupon he entered a motion to hear the evidence orally on the issues raised by his answer as amended. He also entered a motion to refer the cause to the commissioner to hear the evidence. The court seemingly overruled both motions and sua sponte entered an order referring the cause to the commissioner to ascertain amount of deposits in the bank as of November 11, 1934, the total number of persons petitioning for the reopening of the bank and the total amount of their deposits, the names of those withdrawing and the total amount of their deposits, and facts respecting each deposit of those attempting to withdraw. The commissioner was directed to hear evidence and make a report on these topics. Later, this order was amended "so as to permit all depositors whose names were in the amended answer, filed November 16, 1934, * * * as of November 15, 1934, to withdraw from the original petition signed by them, if the evidence shows their withdrawal on or before that date."

The commissioner heard the evidence offered by the parties and reported in conformity with the order of the court. His report contains this statement:

"Said petition contains a very carefully wrought out and feasible plan for the reopening and reorganization of said bank as tendered by the petition herein."

A summary of the deposits as reported by the commissioner is as follows:

"Grand total of all deposits, $82,954.17.

"Total amount signed for reorganization, $67,506.60.

"Total deposits, withdrawees, $17,196.61.

"75% of total deposits, $62,215.62.

"Petitioners' total less 75% of deposits, $5,290.98.

"Petitioners' total less withdrawees' $67,506.-60—$17,196.61, $50,309.99."

It will be observed that those agreeing to the reorganization and reopening, on November 15, 1934, owned 81.374 per cent. of the total deposits of that date; deducting therefrom the $17,196.61, the deposits of those attempting to withdraw, there remained only 60.64 per cent. of the total deposits.

The proponents of the plan of reorganization and reopening and the commissioner filed exceptions to the master commissioner's report, which were overruled. Thereupon on motion of the banking and securities commissioner, the action was submitted for final judgment. The court denied relief and dismissed the petition as amended, on the theory that after the withdrawal of the owners of the $17,196.61 of the deposits, less than 75 per cent. of them were asking for a reorganization and reopening.

As we view the record in this case, every question presented in the present one for determination has been determined adversely to the banking and securities commissioner in either Milner v. Gibson, 249 Ky. 594, 61 S. W. (2d) 273; Dorman, State Banking & Securities Comm. et al. v. Jones et al., 257 Ky. 4, 77 S. W. (2d) 429; or Baumlisberger v. Dorman, Banking Commissioner, 259 Ky. 37, 81 S. W. (2d) 876, 879.

Those cases were decided and reported before the judgment in the present one was rendered. The court, the parties, and their counsel seemingly were not familiar with them, or, if they were, they disregarded them.

After quoting a part of section 165a-64, Kentucky Statutes, in Baumlisberger v. Dorman, we said:

"It should be noted that according to the plain

reading of this statute, if the plan of reorganization with full report of what had been done in adjusting the affairs of the bank is submitted to the banking commissioner by its proponents, his duties are clearly defined and his authority plainly limited in respect thereto. When the plan of reorganization has been submitted to him, his sole authority is to 'thereupon require any further or additional things to be done, as in his opinion, will be necessary to place (the institution) in position to open and function as a going concern.' He is without authority to do more or less. If by his negligent or bad-faith performance of his duties in respect thereto damages result, they are recoverable on his official bond. See Button et al. v. Nevin (Ariz.) 36 P. (2d) 568.

"This statute deprives him of the privilege of introducing extraneous matters as an excuse or a reason for not approving the plan of reorganization. Unless he conceives and presents something 'further or additional * * * to be done, as in his opinion, will be necessary to place the (institution) in position to open and function as a going concern,' it is plainly his statutory duty to approve the plan of reorganization and reopen the bank. Adhering to the accepted rule that all administrative agencies of this commonwealth (including the banking commissioner), in the interpretation and administration of statutes (Dorman v. Dell, 245 Ky. 34, 52 S. W. [2d] 892: Board of Registration Com's v. Campbell, 251 Ky. 597, 65 S. W. [2d] 713), are subject to the jurisdiction of the courts, it follows that in case of his refusal to approve the plan of reorganization and reopen the bank, either with or without reason, and thereafter, the plan of reorganization is presented to the circuit court by an appropriate pleading in behalf of those interested, in the proceeding pending in the county in which the institution is located, as provided by section 165a-17, Kentucky Statutes Supplement 1933, then his authority as banking and securities commissioner ipso facto ceases, and the jurisdiction of the circuit court becomes and is exclusive. Thereafter, it is solely within the discretion of the court to approve or not to approve the plan of reorganization and permit

the reopening of the bank, affording to the banking commissioner the privilege of solely presenting therein 'any further or additional things to be done, as in his opinion, will be necessary' to place the institution 'in position to open and function as a going concern.' It is the solemn duty of the banking commissioner to comply with the order of the court appertaining thereto, the same as any other party to the proceeding, and if the court's order is not satisfactory with him, his remedy for relief is by an appeal as provided by law.

"As was said in Dorman, State Banking & Securities Commissioner, etc., v. Jones, 257 Ky. 4, 77 S. W. (2d) 429, 431: ' "A reorganization of a corporation in the hands of the receiver is authorized by law (now by statute), favored by the courts, and comports with public policy." Jennings v. Fidelity & Columbia Trust Co., 240 Ky. 24, 41 S. W. (2d) 537, 542. It is the solemn duty of the commissioner like unto that of the courts to observe and respect this policy. And when the banking and securities commissioner or the court is convinced that the stockholders and depositors, or creditors, are prepared to go forward with the bank's affairs and to discharge its obligations, a reorganization should be approved.'

"We observe that the court permitted consenting depositors to file pleadings attempting to withdraw their approval of the plan of reorganization and to repudiate their acts in connection therewith. Much confusion has arisen and delay has occurred in this action from the ruling of the court permitting consenting depositors to withdraw their consent to, and approval of, the reorganization plan. A depositor, who, by an affirmative act, such as personally attending meetings for the purpose of reorganizing and agreeing thereto or the placing his signature to a writing evidencing his consent, has agreed to the reorganization, may not thereafter withdraw his consent or repudiate his act, manifesting it, except on an allegation and proof of fraud or false representation or a plea of non est factum to his signature to the writing evidencing his consent to, and approval of, the plan. The reorganization of a bank is a matter of public inter-

est, and after the plan of reorganization has been presented to the court, as herein indicated, the consenting depositors are subject to the orders of the court and they may not lightly disregard or repudiate their act manifesting their approval of the plan of reorganization. After a depositor consents in a manner binding him with the other depositors, aggregating 75 per cent. of the total deposits, he may not be absolved of the obligation for any less cause than that which will relieve a party of his contract concerning any other subject-matter.''

In the light of this pronouncement, it is plain that the court improperly overruled the demurrer to the defendants' answer. It likewise erred, when it regarded the attempted withdrawal of owners of the $17,196.61 deposits. Its order referring the cause to the master commissioner was based on those errors. There was no issue to be referred to the master commissioner for his action. Under our construction of the statute, in the above cases, on filing the petition seeking the court's approval of the plan of reorganization and reopening, the court assumed plenary jurisdiction of the cause, and thereafter the banking and securities commissioner had only the limited privilege defined in the above cases.

For the reasons indicated, the judgment must be reversed. On the authority of the above cases, if the court approves the plan of reorganzation and reopening of the bank and deems it essential to the welfare of the new organization to obtain a loan from the Reconstruction Finance Corporation or to sell it preferred stock in the bank, or either or both, or if it deems for like reasons necessary to secure Federal Insurance of Bank Deposits, procurement thereof may be had in the manner used in the Baumlisberger Case.

"Inasmuch as the record fails to disclose the status of the bank and the feasibility at this late date of the plan of reorganization, we express no opinion, as the proper procedure, in the circumstances, to determine whether it is now possible of execution.''

It is pertnient to say that the court has jurisdiction of the subject-matter and of the parties, including the banking and securities commissioner and the liquidating agent, and if on a proper showing the court is convinced

it is not practical to place the bank, if reorganized on the proposed plan, when perfected, under the supervision of the court, so it will "function as a going concern," in that event the court should expeditiously terminate the payment of salaries and expenses of liquidation, and by and through its master commissioner, acting under proper orders of the court, close the affairs of the bank without delay and with the least possible cost and expense to the depositors and stockholders.

Wherefore, the judgment is reversed for proceedings consistent herewith.